Take the final case of the morning, Emmerick Farms v. Marlen. Counsel for the appellant, you may proceed, and please state your name for the record. Good morning, Your Honors. Brian Connor for the appellant, Jim Marlen. May it please the court, the morning counsel. Your Honor, this is a contract case. In 2010 and time subsequent, appellant Jim Marlen leased to Emmerick Farms and eventually a new entity called Fayette Farms, Brown v. Fayette Hill. Mr. Marlen, the primary actor for plaintiff's full-level, now FLE, was Benjamin Emmerick. I'm referring to Ms. Benjy throughout the briefs, and that's how it's referred to in the trial court. And these two men were, as the shadows got long in October of 2011, and the written contracts for lease of farm ground in Fayette County came to a close, were tasked with trying to figure out what was going to happen in the upcoming year, in fact, the upcoming two years. As Your Honors will note from the outset, there were contemplated lease extensions for a period of two years that would have covered the beginning of 12 and then through the end of 13, which should bring some alarm bells to the court, because those are contracts for an interest in land that cannot be performed within one year. Mr. Osmond is going to tell you in a moment about why the statute of frauds he believes and, ultimately, the trial court believes did not apply in this case. Under an exception, Doctrine of Part Performance, that can occasionally take contracts out of the statute from the front and center and allow an otherwise unavailable contract to proceed. Procedurally, we got here because the trial court issued a judgment in the amount of $264,830.80 in favor of two entities, that being Emory Farms and Fayette Farms. Really not critically important how those two interweave for the trial court's judgment, but they were two entities and Marlin and his wife at the farm trust were the other. So on March 21, 2016, the court did that, and it did that by a written judgment after it made a pronouncement from the bench about its ruling on how it came to render judgment in that amount. That is a money judgment for breach of contract. As your honors are aware, that's a matter of law. I just heard some arguments in the preceding case about the confluence of law and equity, and this would be moving away between law and equity. Mr. Oseman, on behalf of Emory and Fayette, brought four counts, four separate places broken down by pointing lines. So essentially, there's two theories.  The legal theory being for a breach of lease extension. That's what Judge McCain's written reward from March 21, 2016 says, breach of lease extensions, rendering judgment $264,830.80. His other theory of relief, as pled, was an equitable theory on behalf of each of the two plaintiffs, and that was for unjust enrichment, quasi-contract, quantum heroin, detrimental reliance, estoppel. You named it. It's equitable. He won. And that's because in October 2011, some time in October 2011, clearly there's some disagreement within the record between the parties about when in October 2011 the following actions took place. But Benji Emory puts down some fertilizer, and he performs some utility. It's really not in dispute because he did that. Maybe some problems with the proof, and we identified those in our brief, but ultimately, there are actions taken on the ground. Then the two men, Marla and Emory, get together at the Powhatan Restaurant in Mocana, Sonoma on Halloween. Maybe it was the 27th, and the parties disagreed. But at some point during a rather heated exchange in front of Judgment Day, the trial counsel makes some arguments that essentially it was on Halloween. It was formed on Halloween. The point goes out in the brief. So at that point, the two men had met, shook hands, and walked away. But under the then-existing leases in 2011, they were obligated to, by written renewal, the Illinois cash rate farm lease, they were obligated to place their extension in writing and come to new terms in advance of December the 1st. Because December the 1st was a constructive notice time for the upcoming farm bill. That never happens. Jim Marlin sent those leases. He went back to his office after they shook hands at the Powhatan, and he sent those leases to Emory Falls. Five weeks passed, and nothing happens. No return, no nothing. Nothing happens. Let me get this straight, just to make sure I understand what happened here. Yes, sir. You represent the landlord, right? That's correct. And Mr. Marlin is the landlord? Yes. And after this meeting at the restaurant, it's the landlord that sends unsigned written contract to the proposed tenant, Mr. Emory. Is that correct? Correct. And when did he mail this contract? I believe three days later. These were proposed written farm leases unsigned for two years. Is that correct? That's correct. They have all the detailed terms on them? Yes, they do. Okay. And then it wasn't reproduced in our appendix. I moved the appendix. I thought it was pretty good. It looked very close to the other contracts. In fact, there were these book portions for extension. Not only did these leases call attention to the idea that these extensions must be in writing, they're then under that duty, right? They're existing in a contract universe. They are under a duty until December 31, 2011 in those contracts. It was tried before Judge McKinney on a bench trial? It was. Let me ask you about this law equity defense that you're raising. It's my understanding that that was not raised until the motion to reconsider. Is that correct? At least in part.  It never became clear that that was necessary until the court rendered judgment. It's my understanding. I want you to correct me if I'm wrong. Yes, sir. My understanding from the briefs is statute of frauds was raised in a motion to dismiss. It was, of course. And Judge Schwarm denied the motion to dismiss. That's correct. That's the first place this appeared, Robert. And then there were four counts under counterclaim, correct? Yes, sir. Then proceeded to bench trial. First two counts were law. The last two counts were equity. Once again. Correct? And after hearing the evidence, Judge McKinney resolved all evidentiary issues in favor of the plaintiff? That's correct. And all credibility issues in favor of the plaintiff? That's correct. And granted an award of money damages under the first two counts, correct? That's correct. And no issue at that time had been raised as to whether or not the type of damages that were awarded by Judge McKinney under the first two counts could be issued. By then, that had not been raised. It had not been raised. And then on your motion to reconsider, you raised that law equity dichotomy. Yes, sir. Tell me why that is not forfeit. There was no way for counsel at trial to have anticipated that the court would render money damages in counts where it was not available based upon a theory that only affords relief in equity. That may have not been a part of the court. What about the fact that it was raised in counts one and two? Are you telling me counts one and two did not ask for what was given in the judgment? It did, but it relied upon an equity doctrine that was only available for counts three and four. It was properly before the court in counts three and four. There's no problem there. There's no way that trial counsels could have identified that the court would conflate counts three and four with counts one and two. And it's not until immediately after the judgment is rendered that the error is exposed. Explain to me how Judge McKean granted a judgment under counts one and two that was not asked for in counts one and two. I believe he asked for that, sir, but he didn't use the theory of part performance to get there. He used the concept of breach. There was no way to know that the court would contort reason and logic to use part performance to grant a remedy that was not available until that moment in time. You can hear trial counsel Jensen, in fact, who reproduced that abortion, saying, well, wait, wait, Your Honor, you mean you were not trial counsel? I was not there, sir. Okay. What about the fact that it was asked for in the pleadings? Money damages. He certainly asked for money damages, but how he gets there is the important part of the judgment, not necessarily what he's seeking. He gets to seek two things, law and equity. He gets to seek breach in law. He gets to seek equity on detrimental reliance. It wasn't got there. But what he can't do is take the doctrine of part performance and somehow suture it into his law count as a sword and say, now I get my law's profits for the breach of those extensions based upon the doctrine of part performance. He gets equity, but he doesn't get it. So he takes his portion of three and four and maximizes his damages in one and two. He just crosses the two. He can't do that. And there's – and the question you're asking me is about waiver, and it's not until Judge McCaney conflates the two that we were able to come back and say you can't do that. We had properly raised the statute of frauds previously. I think counsel concedes that in the motion of grievance services. I'm not surprised. The essence of waiver is surprise. I'm not prejudiced. I'm not surprised. We talked about it at trial. The statute of frauds was there. But again, it's not possible for trial counsel to anticipate that that – that you're going to take an equitable defense because if you look at his cases, they're all equitable defenses to things like forced pledgery and detainment, specific enforcement of a contract. In fact, Judge McCaney even makes that error in his ruling. He says specific performance. He means partial, but he says specific. I think that's because he had just read the case that Judge Schwartz had to deny the motion to dismiss, which was a specific performance case, using Minnesota law to decide that issue. Reviewing the pleadings, it appeared that the appellee responded to the motion to dismiss on the statute of frauds by even arguing that the part performance is an equitable doctrine. So it was raised in that pleading. Isn't that true? At least as to Council 3 and 4, yes. And I would concede that. But as to Council 1 and 2, no. I'll give counsel an opportunity to respond to your argument. And I appreciate that. And I just want this court to be clear that when he saw four things – two things, if you break down my point of the defendant – he can't take a doctrine from one and stick it to the other, which is what he's trying to do. From a pure policy perspective, this exception, this equitable doctrine will swallow written contracts whole if it is allowed to somehow gobble up the idea that when you want legal damages, you can then – I know of no case in the courts that – that's why I guess the waiver industry is so critical to it – that allows that. And I don't think it's fair to have expected trial counsel to think that he would try to, from that policy perspective, use that sword, right? I want my money damages and reach it all by using this defense in fairness doctrine. So immediately after, you can fly in and say, hey, judge, you've conflated the two things. You can give them one or you can give them the other. But you can't give them that one on that theory. You can't give them the law damages on the other. The counsel did – Judge McKay, he allowed you to plead, to amend prior to considering the motion to reconsider? He did. He did. In fact, I believe that was conceded by all sides. He did allow that amendment, essentially saying, well, isn't this just going to make it easier for you to appeal? Counsel says, oh, I don't know anything about that. But everybody agreed that there was no prejudice, which, like I said, I believe is the crux of the waiver, is surprise, prejudice. The idea that we would show up and somehow spread this court defense on counsel. And I think everybody agrees that didn't happen. He was in no way surprised. And as he points out throughout his brief, he is the master of his complaint. He created this – in fact, the Emirates created this situation by sitting on the written leases for five weeks before mailing them back. I understand. Farming is a busy business. That's a busy time. But that's the timeframe that they had agreed to under the written contract. And so then to realize the error and escape it by using an equitable doctrine as a sword to get to money damages is fundamentally inequitable. Excuse the word. Because he gets to a higher damages amount by using a doctrine that's not an equitable one. He can have that. And the court could have certainly granted him his equitable theory, could have given him the tillage, could have given him the fertilizer based on detrimental reliance theory. There's sufficient facts in the record that the court could have done that. And, in fact, that's where the testimony was going. That's where – certainly there was testimony about lost profits, and we make some arguments about why the court shouldn't buy that. But fundamentally, we have a very solid legal doctrine, in fact, one that is on a sale by the brief of the MLE. And to say that we somehow believe it when the crux of the waiver is surprises, it's difficult to get through that with a straight face because I wasn't at the motion to reconsider it. We all have back and forth about, well, I wasn't surprised by this. No, this is the statute of frauds. So to then say that a refinement of that argument is somehow a brand-new argument, I think it's disingenuous. That's not a new argument. The distinction between law and chancery existed throughout the proceedings of the proof. That didn't spring up. We didn't spring that on them after the judgment. That was simply unexpected that the trial court would misapply the federal doctrine of part performance in a legal action. We see no cases where that's even been an issue. These all appear to have been decided in the middle of the 1990s. They came one right after another. This court's version is Kane v. Frost, but none of the other districts' cases changed that doctrine in any way. They're all the same. And you can't get the statute of frauds out of the way to get a legal remedy. That's good policy. That's good law. And the facts in this case bear that out. There was sufficient remedy for Emmerich and Fayette Park. They could be made inept. But what they can't do is get their loss of profits at law by saying, well, we partially performed. We were supposed to have executed a written contract. Well, we were partially performing this other contract that didn't exist. Even if you can see that it happened as early as the 6th of October, which 5th, 6th of October is Benjamin Emmerich's testimony, that's when he says he partially performed the contract. But wait. He pleads that it's not even created until the 18th at the earliest, the 31st at the latest. You can't perform, even partially, a contract that does not exist. You can get to a limit of why. You can quasi-contract. You can quantum-error it. You can equity it throughout. But you can't partially perform. You can't breach a contract that doesn't exist. That contract, even by their estimation, is the 18th to the 31st. Are you suggesting, then, that it was against the manifest weight of the evidence for Judge McHaney to find there had been park performance? Yes, sir. That's a bit of a separate issue. But, yes, we also allege that. I maintain that they didn't partially perform it. They went out there and they put some fertilizer down, and they tilled it in preparation of the next growing season, but they performed no obligation under the contract. Looking back to McCain v. Cross, he pumps down some money for earnest money, and then he thinks he's going to enforce damages in the idea of park performance. Of course, no. He can't do that. He can't have money damages for partially performing. You get an equity. You can run it back. You have other equitable relief that may have been available to you, but you can't enforce that. The only places where the court has done that appear to be defenses in Forcible Entry Detainer and the Anderson case that's cited by abilities. And, again, those are all defensive postures. Nobody's coming in as a plaintiff. Plaintiff park performance of a new oral contract that relies 100 percent on the written terms that were set by Jim Martin and unresponded to in five weeks. There's no other post in the record about what would have happened other than those written terms. They would have to believe it, and Judge McCain's judgment is against the manifest way of the evidence because it's three days after the Powhatan meeting that, in fact, those contracts get mailed to Martin. He would have to believe that he waited for either the 5th or 6th or the 18th then until after the Powhatan meeting to believe that those contracts were formed earlier. He just waited until after the Powhatan was mailed. That's against the manifest way of the evidence, especially because Benji previously testified that Price was not discussed until Halloween. There was cross-examination of when Benji believed that contract would have been formed, and we call your attention to that because we think that's important, that he remembers better the second time around. He believes that Price wasn't discussed until the meeting with Powhatan, and then at trial he remembers better and says, oh, well, it was probably before that, maybe the 5th or 6th, maybe the 18th. Whatever, it serves him best to not having been out the money for having blown the contract. Thank you, Counsel. You'll have an opportunity to reply. Counsel for Appley. Good morning, Your Honor. I thought this was a complicated case all of a sudden through the last two meetings. And I must confess that I hold myself out of being an expert in the liability companies, and I was fairly confused. So I don't envy your job in that particular case. I'm Ron Hoffman, and I'm the attorney for the Appley-Emerick Farms, Fayette Farms, and Benjamin Emerick. May it please the Court. Counsel. I'm not sure I have to respond very much to that because I believe Judge Moore has keyed in on the exact issue in this case, and that issue is waiver. I want to discuss a few things first that I believe is important. And the pleadings in this are important. As counsel has said, on November the 3rd of 2011, Judge Schwarm issued a ruling on a 2619 motion and specifically found that there was enough in the complaint to take it out of the statute of frauds because of partial performance. That issue was raised a couple more times in a minute pleadings with no ordering in it. Then at the conclusion of the trial, Judge Haney then said the same thing. And it's in his order, and it's set out very specifically in his order. He does say, instead of partial performance, he does say specific performance. I agree that that's probably just a mistake. But now then, what's important is, is following that, there was a motion to reconsider filed, and for the first time, for the first time, raised the law versus equity issue. That is not part of the statute of frauds. The statute of frauds does not talk about law versus equity. That's based upon the manner in which the courts, after jurisdiction, becomes an inserted court in accordance with the Canning case. Jurisdiction, whenever a case is filed, whether it's equity or law, jurisdiction hatches an insert court. Let me ask you this question, Mr. Rosman. As I understand the cases, that when the doctrine of part performance is invoked by a court to avoid the statute of frauds, that's considered an equitable remedy. That would be correct, Your Honor. Okay. You've sought both law damages in counts one and two, and equity damages in counts three and four. That's correct, Your Honor. Okay. Now, what's important is, is that in the motion to reconsider, for the first time, the issue, and this issue is not subsumed in the statute of frauds. The issue of law versus equity is not subsumed in that. It's nowhere in there. That's a different issue, and that's a defense that has to be asserted, the same as the statute of fraud has to be put into an affirmative defense. That's why counsel realized after the trial, I don't even have a defense here for the statute of frauds because I didn't plead it. So, yeah, they amended it, and they pled it. Well, prior to the motion to reconsider, was there any pleading raised by Apple, the counsel for the appellant, for the issue of law equity, law damages not being available in a case of the statute of frauds? Absolutely not. That's only in the motion to reconsider. Only in the motion to reconsider is the first time. Then they filed an amended answer, and in their amended answer, and their amended answer is a CA-29, and in their amended answer, they set up an affirmative defense, and it is like the statute prevailing for the statute of frauds. Well, in that amended pleading, is that defense of damages not being available raised there in that new pleading? All I can do, Your Honor, but they don't even say it's an affirmative defense, and they should have set that up. But aside from that, the claims and causes of action asserted by plaintiffs in the second amended complaint are barred by the statute of frauds, which provides at 740 IOCS 80-2, and they verbatim cite the statute of frauds. Nothing about, absolutely nothing about law or equity. So even in their affirmative defense now, they've not raised it, and affirmative defenses have to be factual. So they haven't raised it in their affirmative defense, which they didn't even put in until after judgment. I didn't object to them amending it after judgment. Remember, I happen to know the law that you can amend a judgment any time, up to, and even after you come up here to the appellate court. I've been up here too many times on that issue. So I didn't raise that issue. I knew what they were trying to do. They wanted it. They knew. They realized, shoot, we're going to go up there with new bullets, but we haven't even raised it. This is an affirmative defense. That's okay, because when they do that as an affirmative defense, burden of proof goes on them to prove their affirmative defense. Shifts from me. Now, let's talk just a little bit, and the similar case, of course, the Supreme Court case in that matter, in regards to waiver is cited in the brief. It's the Everson case. Now, let's talk a little bit about the actual trial and the judge's rulings. Every issue that has been raised on appeal, and I'll go through them at the end, but every issue that's raised on appeal is dependent upon the judge's rulings. And in each instance, evidence of damages, whether or not there's sufficient evidence, the standard is that the judge abuse his discretion. When you read this record, there was no evidence presented by the defendants other than the testimony of Mr. Martin. No documents, no evidence. They talk about how that it was against the manifest way of evidence. They have no evidence. They have no evidence other than Mr. Martin's testimony, who the judge found, and I've never had a judge do this before, but in his order, or in the hearing order, he said, I'm talking to the appellate court now. I do not find Mr. Martin credible or worth threatening. So this court is in a position that all kinds of precedent in regards to a court's finding in a trial, there is no evidence for them to say it's against the manifest way of evidence. There is none. The only testimony, the only evidence is Martin's testimony, and in fact, his credibility has been discarded by the judge. So when you look at this case then, and you get down to it, and you look at what counsel has asked you to do in his appeal, let me get to the right page, let me get some water. I'm a spy, you know. Oh, and by the way, just as an aside, Mr. Kane from the Kane vs. Cross just passed away a month ago. I saw him in the paper. He was 94 years old. Here is one of the issues that the counsel has indicated. One, whether the trial court error occurred in finding partial performance of alleged formal agreement sufficient to remove the agreement from the statute of frauds. That's a fact question that the judge found. There's no evidence other than what the judge had ruled except Mr. Martin's testimony. Then he was unequivocal in the record that on October the 5th was whenever they agreed to all the terms. That's in the record. Now, you know, in depositions there was some difference. I don't find that unusual. October the 5th was when the contract was formed. Price, fertilizer, all those issues. But that's your statement's in the record that it was October 31st. Not the first time I've misstated something, Your Honor. And, you know, and, you know, as I pointed out, you know, that's not binding on my client. You know, so that's not the first time. I may have made a misstatement today. I never do it intentionally. But, you know, it's something I wish I hadn't done, but it happens. That was an argument? I'm sorry? An argument? What phrase of the trial was that that you said that? That was at the end, Your Honor. But, you know, it was in closing arguments is what it was in. And it got pretty heated, as counsel said. You know, it got pretty heated. So, issue one. Issue two, whether the trial court heard and find that partial performance of an alleged oil contract occurred even before the contract was formed. Again, a fact question. Judge heard Benji's testimony. He believed October 5th was when the contract was formed. He didn't believe Mr. Bartlett. That's very simple. You know, in order for this court to find evidence in that, they have to find that he abused his discretion and was against the man faced with evidence. There's no such thing there. And when did he go out and plow and fertilize? He went out and plowed and fertilized. The record will show the invoices were October the 15th, October the 29th, October the 31st. He ordered the fertilizer earlier than that. So that's in the record, and it's in the discussions in regards to the invoices. So he took those actions immediately after October the 5th. He had already done it, the majority of it, prior to the meeting, which, again, there's a disagreement. Benji says it was the 27th. Mr. Marlin says it was the 31st. But the record has it there. Mr. Marlin even immensely talked about fertilizer at that meeting. So he'd already done it by then. But this is not a case about the contract and the fact it wasn't signed. That's a red herring. It's not about that. Because the contract was formed, the oral contract, to extend on October the 5th. And that's what the judge found. And there's no credible evidence to the difference. Counsel's approach in this case was not to present any evidence, no witnesses but Mr. Marlin, no documents. They pinned upon picking at our evidence, you know, saying it's not credible, saying, you know, that you're lying. That's not something that this court can now say that the judge who heard the witnesses spoke about the credibility of the main witness. But you can now say that this record contains evidence that's against the manifest weight of the evidence. Now, the big bugaboo is the Cain case. If they would have raised that issue either at the time of the original 2613 motion or any time else in between, they may have a case. They didn't. This stuff about, like, I didn't know what the judge was going to do. So, therefore, I couldn't. I couldn't raise this issue. I couldn't believe that the judge would raise this issue. That has to be raised on the pleading stages. That issue, the issue of whether or not it's law or equity, is the same as the statute of limitations. It's waivable. It's not jurisdictional. It's waivable. And they waived it. They did not raise it until the motion to reconsider. Edison case says very specifically, can't do that. Not even before this court. I'm not arguing with the Cain case. Cain case, I think, is law. But it's in defense. They waived it. So, the third thing is whether the trial court heard in awarding damages measured by the plaintiff's alleged loss of profit. That, again, is counsel's argument that permits inequity with law. That's, again, judge's decision. He heard the evidence. He made rulings on the evidence. He made rulings on Exhibit 8 and Exhibit 9. And in those rulings, he made his rulings. Now, the court can only overturn that, only overturn that if, again, his rulings are against the math this way, the evidence. They complained because Exhibit number 8 was a marked page. Then she testified it was paid. They claimed that's not good enough. You've got to have an invoice marked paid. Well, it's in the briefs, plenty of case law. Even the judge questioned and said, well, I thought the law in Illinois was as if, you know, if there was an interest and it testified it was paid, you know, that was evidence. That's what the judge said. And that's what the law is. So they're arguing again about something that the judge has decided in his complete authority after hearing the evidence. And he made a factual finding. And that's what he ruled. But the most important part about, and this court should look at, it's almost like the argument right before you is, this issue of law and equity, it's not even before the court. It's not even on the issue. Not only did they not plead it in their affirmative defense, then they want to come to the appellate court and argue it vehemently, and it's not even on the issue. I don't know if they believe that that is, as I said earlier, subsumed in the statute of frauds, but it's certainly not. You know, I mean, it's certainly not. The statute of frauds doesn't talk about law and equity. The statute of frauds is an evidentiary ruling statute, and it's a defense. If I don't plead it as an affirmative defense, contract comes in. You know, and that's the same way with the issue on equity versus law. They waived it under the Edmundston case, and I would ask that you deny their motion. However, you know, you always hesitate to hedge your bets, but if you determine and you decide that they're correct and that there was no waiver and that the judge exceeded his authority and there was evidence that he shouldn't have, you know, that was the standard, then you should remand this case back to the circuit court. I promised myself I wouldn't say remand back. You should remand this case to the circuit court on counts three and four because the judge has not made a determination on those counts. Thank you. Thank you, Mr. Alton. Please, bye. Thank you, Mr. Oster. I want to make sure I clear up one issue of candidate first. I said I was not at the trial. My firm did trial. I am a member of the same firm. I just don't think the court made a decision apart from that. Thank you for clarifying that. But I was not present. All of my knowledge comes after the fact. So here's DeNovo. He admits it. He knows it. This is an issue of law. He's trying to make this an issue of fact. It's not. It absolutely is not. This is a DeNovo appeal on the application of Kane v. Frost in this case. We didn't win it. And I gave you that answer. Let's go back to the candidate. I gave you that answer to a question, Mr. Justice, and I stand by it. I'm going to point to our appendix, page 812. That's C-144 of the common law record. It's paragraph 16 of the Second Amendment complaint. That's in the pleadings. He then goes out to delineate four counts, those being common allegations to all counts. They apply across the board. We didn't know he was going to apply that paragraph illegally. We didn't know. We couldn't have let it. Certainly, that affirmative defensive statute of Frost was not a surprise. He knows it. Everybody who stood there at the motion to reconsider concedes. No one was surprised. Judge Schwarm wasn't surprised when he ruled on the original motion for dismissal. When Mr. Othman stands here and tells you that was not part of the pleadings, it absolutely was the motion to dismiss. The motion to dismiss was denied because it was going to go to trial because it was not clearly dispositive on those facts that he was not entitled to equitable relief. Edward could very well have been entitled to equitable relief. Perhaps he could have been entitled to relief in some other way. At trial, the judge lets this survive the motion to dismiss and says, we're going to get the facts out. But in no way could we have expected that he was going to take paragraph 16 from the common allegations and apply it to counts 1 and 2 where the law specifically says he can't. We didn't know. We couldn't. We didn't have a chance. I would also point out the way that the closing argument, as counsel phrases it, happens. It didn't look like any closing argument either to McFarlow. It opens with a question. It doesn't say, counsel, please present your arguments in an organized and orderly fashion. It says, Jensen, how is the doctrine of part performance valid? How is this not contrary to the doctrine of part performance? So they get into that back question immediately. There's not even an opportunity to say, whoa, whoa, this doesn't even happen this way. And again, it's not until that full-blown judgment that we know via oral pronouncement from the bench, I would point out, without findings of fact, there are no findings of fact that allow this court to say, oh, Judge McHaney relied on this fact for this count or this fact for that count. When we start talking about the date of contract formation, had this court known what Judge McHaney believed the date of the contract formation to be via the finding of fact and written order, or even from an oral pronouncement from the bench, I find the contract performed on this date. It may have given us some direction at that moment in time to be able to argue and say, hey, well, you're applying the wrong law to the wrong place. It was plain as truth. They're the master of their complaint. They want that out to you adequately. They're the master of their complaint. They chose common allegations. Then reiterate them in each and every count. Cross-court, legal panhandle, all set. Their choice, not our way. I want to return to this issue of what happens to contracts if, all of a sudden, the doctrine of partial performance is now not a defensive avenue, not a way to prevent fraud, but now a way to say, all right, I don't have to worry about returning those contracts. I don't have to worry about whether or not we can – remember, the Everett's couldn't have decided any time before the 31st of September not to proceed in this contract. They could have walked away in a Jim Harman no-tell. Everybody else has read it out. They could walk away at any time. They don't send somebody in and say, hey, Jim, remember that conversation we had? Keep it open. There's no indication of any back and forth that after they meet at the Powhatan, they order it in to the Powhatan. Then Everett comes into possession of those contracts, and he doesn't return them. I don't know why. I don't know if he misses the deadline. I don't know if he's – maybe he's got a better deal on the line. Maybe he's got a cheaper price. When Judge McCain resolves those credibility issues in favor of Everett and against Marble, he knocks Marble for saying, well, I got a better price along the way. I did better, so I got a better price. Sorry, gents, this is about the 9th of December, and he sends the letter that says he never sent his stuff back. I got a better price. I'm moving on. What Judge McCain did not consider is that maybe Everett's got a better price. Maybe Everett's got somebody in the bag up until mid-December, right? So he wants to string Marble along because he's going to get a cheaper farm rental for us to make an even greater profit. But Judge McCain found the opposite of that, didn't he? He did. He did. But there's no – it's unclear that he even considered that the two things could be an option. Thank you, Counsel. Court will take this under advisement.